UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
PIKEVILLE

| | |
|---|---|
| PENNY GRAY, ) | |
| ) | |
| Plaintiff, ) | Civil No. 13-73-ART |
| ) | |
| v. ) | |
| ) | **MEMORANDUM OPINION** |
| NATHAN MARTIN, et al., ) | **AND ORDER** |
| ) | |
| Defendants. ) | |
| ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

Defendant Esurance Property & Casualty Insurance Company ("Esurance") removed this case to federal court on the basis of diversity jurisdiction. But the one-year window for removal has closed. Therefore, 28 U.S.C. § 1446 bars removal of this case, and the Court must remand it back to state court.

## BACKGROUND

This case arises out of a 2010 traffic accident. Driving in Floyd County, Kentucky, Penny Gray collided with Nathan Martin. R. 1-1 at 2. Both drivers were citizens of Kentucky. *See id.* at 1. On July 1, 2010, Gray sued Martin in state court for negligence. *Id.* at 2. Gray's initial complaint also asserted a breach of contract claim for Underinsured Motorist ("UIM") benefits against her insurer, Esurance, a corporate citizen of California. *Id.* at 1, 3. Gray amended her complaint to add two more defendants and ultimately settled with all defendants but Esurance by November 2012. *See* R. 1 at 2; R. 7-1 at 2 (concurring with the defendant's account). Settlement negotiations with Esurance continued, and on May 7, 2013, the parties agreed on an amount to settle the remaining UIM claim "in exchange for

a Full and Final Release." *See* R. 7-2. Despite an agreement in principle, Gray and Esurance haggled over the scope of that release for the next ten weeks. Amid those negotiations, Gray moved to amend her complaint on June 14, seeking to add bad faith claims against Esurance. *See* R. 1-3 (Motion to Amend Complaint). The state judge granted her request on July 3. *See* R. 7-3 (Order Granting Motion to Amend). Shortly thereafter, the parties resolved their differences, and on July 17 they executed a final release agreement that released Esurance from Gray's original UIM claim but left her bad faith claims intact. *See* R. 7-5 at 3–4. According to Gray, and undisputed by Esurance, the litigants then promptly filed an agreed order dismissing the UIM claim. R. 7-1 at 3. With only Gray's bad faith claims remaining, Esurance removed the case to this Court on July 19, invoking this Court's diversity jurisdiction. *See* R. 1. Gray has now moved to remand. *See* R. 7.

## DISCUSSION

Removal has its limits. Defendants generally may remove a civil action brought in state court to federal court if they could have originally brought that action in federal court. 28 U.S.C. § 1441(a). But because removal disrupts state court proceedings, Congress established certain restrictions on that right. A defendant has only thirty days to seek removal after receiving either an "initial pleading" indicating the case is removable or an "amended pleading, motion, order or other paper" indicating the case has become removable. 28 U.S.C. § 1446(b) (2006 & Supp. IV 2010). Additionally, Congress created a narrow window for initially ineligible cases to become removable based on diversity jurisdiction. The defendant may not remove a case pursuant to diversity jurisdiction "more than 1 year after commencement of the action" if that case as "stated by the initial pleading is not removable." *Id.*

2

In 2011 Congress added a bad faith exception to the one-year time limit, but that version of the removal statute does not apply here. *See* Federal Courts Jurisdiction and Venue Clarification Act of 2011 ("FCJVCA"), Pub.L. No. 112-63, § 103, 125 Stat. 758, 760 (2011) (providing that a defendant may remove a case more than one year after it commences if "the district court finds that the plaintiff has acted in bad faith in order to prevent a defendant from removing the action"). The current version of § 1446 only applies to cases "commenced, within the meaning of State law, in State court" on or after the FCJVCA's effective date, January 6, 2012. § 105, 125 Stat. at 762. This suit commenced for purposes of state law, and thus the FCJVCA, when the Kentucky circuit court first issued a summons on July 1, 2010, in response to Penny Gray's initial complaint. *See* R. 1-1 at 8 (summons); *see also* Ky. R. Civ. P. 3.01 ("A civil action is commenced by the filing of a complaint with the court and the issuance of a summons or warning order thereon in good faith."); Ky. Rev. Stat. § 413.250 ("An action shall be deemed to commence on the date of the first summons or process issued in good faith from the court having jurisdiction of the cause of action."). The pre-amendment language of § 1446 therefore applies here. References in this opinion to § 1446 and its subsections accordingly point to the version predating the FCJVCA. Since Esurance's removal comes over three years after this suit began—well outside the statutory window— the Court must grant Gray's motion to remand.

I.   **Esurance's Removal Comes Over One Year After This Action Commenced.**

As Esurance admits, *see* R. 8 at 3, it has attempted to remove this case "more than 1 year after the commencement of the action." 28 U.S.C. § 1446(b). Although the Sixth Circuit has sent mixed signals on whether state or federal law governs when an action commences for removal purposes, that does not matter here because both state and federal

law point to the same date. *Compare Easley v. Pettibone Mich. Corp.*, 990 F.2d 905, 908 (6th Cir. 1993) (holding that state law governs), *with Brierly v. Alusuisse Flexible Packaging, Inc.*, 184 F.3d 527, 534 (6th Cir. 1999) (applying the definition of "commencement of the action" found in Fed. R. Civ. P. 3 to determine when the one-year clock began in a diversity action). Kentucky law, as already described, requires two events to occur to "commence" an action: filing of the initial complaint and issuance of the first summons from the appropriate court. Since both of those events in this case happened on the same day—July 1, 2010—Gray's suit commenced, within the meaning of state law, on that date. Federal law similarly dates the commencement of this suit at July 1, 2010, when Gray filed her original complaint. *See* Fed. R. Civ. P. 3 ("A civil action is commenced by filing a complaint with the court."). Esurance, for its part, concedes that the phrase "commencement of the action" as used in § 1446 refers "to the original complaint commencing a lawsuit." R. 8 at 3. Esurance's notice of removal thus occurred 3 years and 18 days after this suit commenced.

**II.     No Construction or Exception Renders Esurance's Removal Timely.**

So, how does that not end the matter in favor of remand? Esurance offers two alternative arguments that its notice of removal is timely. First, it invokes the so-called "revival exception" to the 30-day window, a questionable doctrine that restarts the removal clock if an amended complaint so substantially alters the nature of the case as to functionally constitute an entirely new action. R. 8 at 2–4 (citing *Johnson v. Heublein Inc.*, 227 F.3d 236, 241 (5th Cir. 2000)); *see also Wilson v. Intercollegiate (Big Ten) Conference Athletic Ass'n*, 668 F.2d 962, 965 (7th Cir. 1982) (recognizing the exception). *But see Dunn v. Gaiam, Inc.*, 166 F. Supp. 2d 1273, 1279 (C.D. Cal. 2001) (doubting the revival exception's legitimacy);

4

*Messick v. Toyota Motor Mfg., Ky., Inc.*, 45 F. Supp. 2d 578, 581 (E.D. Ky. 1999) (same); *Burke v. Atl. Fuels Mktg. Corp.*, 775 F. Supp. 474, 476 (D. Mass. 1991) (same). Grounding revival in § 1446(b)'s text, Esurance maintains that Gray's third amended complaint, by adding bad faith claims, is so different from the prior version that it amounts to a new "initial pleading" and, thus, the one-year time limit does not even apply. R. 8 at 4; *see also Brierly*, 184 F.3d at 534–35 (holding that the one-year rule only applies to cases that were not removable based on the initial pleading). If correct, Esurance had thirty days to remove from when Gray added her new claims, making its removal timely. R. 1 at 5.

Even if Esurance is wrong on that score, however, it also invokes the "estoppel" exception to the one-year removal window, an equitable doctrine—akin to the now-codified exception for bad faith—which a few courts have adopted. R. 8 at 5–8 (citing *Tedford v. Warner-Lambert Co.*, 327 F.3d 423, 426–27 (5th Cir. 2003)). Gray's conduct tolls the one-year clock, Esurance argues, because "[s]he used the existing lawsuit in an attempt to thwart" removal. *Id.* at 8. Gray is further estopped from asserting the one-year rule because the Floyd County Circuit Court should have dismissed her suit as settled before she added her claims for bad faith. *Id.* at 7. Had that occurred, the argument goes, Gray would have been forced to bring those claims as an entirely new suit, eligible for removable. *Id.* at 7–8.

Neither of Esurance's arguments can be squared with the removal statute. Because the one-year window for removal has long closed, the Court must grant Penny Gray's motion to remand.

A.  **The "Revival Exception" Does Not Permit Esurance to Avoid Remand.**

Invoking the judicially-created revival exception does not permit Esurance to evade remand in this case. Two reasons support that conclusion. First, Esurance is wrong to

5

ground revival in the phrase "initial pleading." Despite adding new claims, Penny Gray's third amended complaint is not an initial pleading under § 1446. Second, the revival doctrine only applies to initially removable cases. Since this action was never removable before Penny Gray filed her third amended complaint, revival does not apply.

**An Amended Complaint Is Not an "Initial Pleading":** The phrase "initial pleading" cannot serve as a textual hook for the revival exception. Under both Kentucky and federal law, a complaint is a "pleading." *See* Ky. R. Civ. P. 7.01 (listing the complaint among the types of pleadings); Fed. R. Civ. P. 7(a)(1) (same). Gray's original complaint is therefore the "initial pleading" in this case; by definition an amended complaint cannot be "initial" because it is not first. *See Webster's Third New Int'l Dictionary* 1163 (unabridged ed. 2002) (defining "initial" as "of or relating to the beginning: marking the commencement: incipient, first"). The plain meaning of § 1446 is thus inconsistent with Esurance's proposed construction.

Besides contradicting the removal statute's plain terms, however, Esurance's construction of "initial pleading" is implausible because it would seriously weaken the statutory design. Congress already anticipated the exact situation in this case, providing a right of removal based on jurisdictional grounds first introduced in an amended complaint. But to avoid "substantial delay and disruption," Congress added the one-year time limit as a "modest curtailment" of removal based on diversity jurisdiction. *See In re Pikeville Sch. Bus Collision Cases*, Civil Nos. 11-158-ART, 11-159-ART, 2011 WL 6752564, at *6 (E.D. Ky. Dec. 23, 2011) (internal quotation marks omitted). If the phrase "initial pleading" is construed to include amended complaints, however, it would "effectively extend the opportunity for removal to months, indeed even years, later" when sufficiently different

6

claims might be added. *Id.* (internal quotation marks omitted). That would contradict Congress's goal in creating the one-year cutoff as a rule-like means of "reducing the opportunity for removal after substantial progress has been made in state court." *Id.* (internal quotation marks omitted). For the same reason, the judicially-created revival exception is rightly "questioned as an initial matter." *Dunn*, 166 F.Supp.2d at 1279. And while a bright-line rule is perhaps unduly harsh, it is the job of Congress, not the Court, to correct that injustice. Indeed, by adding the new bad faith exception Congress has already demonstrated that it has the capacity to do just that. *See* FCJVCA § 103.

So, because Esurance's construction of § 1446(b) would dramatically undermine the one-year window for removal in diversity cases, the Court should adopt an alternative reading if at all possible. *See Maracich v. Spears*, 133 S. Ct. 2191, 2205 (2013) (citing Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 180 (2012) ("The provisions of a text should be interpreted in a way that renders them compatible, not contradictory. . . . [T]here can be no justification for needlessly rendering provisions in conflict if they can be interpreted harmoniously.")). And even assuming the phrase "initial pleading" is somehow ambiguous (it is not), the Court must construe § 1446 in favor of remand, further weighing against Esurance's reading. *See Brierly*, 184 F.3d at 534 (explaining the presumption against removal). Since construing "initial pleading" to include sufficiently "new" amended complaints would expand the opportunities for removal, the Court likewise must choose a textually-plausible construction that avoids that result. Thankfully, an alternative, persuasive interpretation—indeed, the only reasonable one—is readily available: the plain meaning.

The plain meaning not only favors remand, but best advances Congress's goal of

establishing a predictable window for removal. Construed naturally as only the first complaint, "initial pleading" neatly parallels the trigger for the one-year removal clock—"commencement of the action." *See Norman v. Sundance Spas, Inc.*, 844 F. Supp. 355, 357 (W.D. Ky. 1994) ("Congress intended the initial pleading to trigger the one-year cap on removal."). And while Congress chose "commencement of the action" to start that clock instead of, for example, "filing of the initial pleading," that shift of terminology does not mean Congress used "initial pleading" in some unconventional, figurative sense. On the contrary, the different triggers simply reflect the distinct purposes of the removal statute's two deadlines. Designed to guarantee a defendant's notice of removability, the thirty-day window sensibly lists the documents that might provide such notice. The one-year clock in diversity cases begins instead with the suit itself ("commencement of the action"), since Congress adopted that deadline to preserve a plaintiff's reliance on substantial state court progress—regardless of newfound federal court jurisdiction. The removal statute therefore offers no reason not to give "initial pleading" its most natural construction as simply the first complaint.

**The "Revival Exception" Does Not Apply:** Grounded not in the phrase "initial pleading," revival is rooted in equity rather than text, and it turns out the exception does not apply here anyway. Revival is based on the judicial intuition that "a willingness on the part of the defendant to remain in state court to litigate a particular claim should not be interpreted as a willingness to remain in state court to adjudicate an entirely different claim." Wright & Miller, 14C *Federal Practice and Procedure—Jurisdiction* § 3731 (4th ed.). By that rationale, revival presumes a case was removable at some point *before* the amended complaint—hence, as the doctrine's name suggests, the new complaint "revives" the right to

8

remove. Courts thus emphasize that revival is only available in "initially removable case[s]." *Johnson*, 227 F.3d at 241; *see also Messick*, 45 F. Supp. 2d at 581 ("[T]he revival of the right to remove is inapplicable because a basis for removal did not exist *until the amendment*." (emphasis added)). This action was not removable, however, prior to Penny Gray's third amended complaint. R. 1 at 3 ("The filing of [Gray's] new claims made this case ripe for removal for the first time since the lawsuit's filing in 2010."). Revival is thus not even an option in this case.

Regardless, Gray's latest complaint would not have triggered revival anyway. In the insurance context, adding bad faith claims to a breach of contract action is hardly analogous to "a new suit begun that day." *Wilson*, 668 F.2d at 965 (internal quotation marks omitted). To the contrary, plaintiffs almost always bring those claims together. *See* V. Brandon McGrath & Blaine J. Edmonds III, *A Survey of Kentucky Insurance Law: A Look at the Bad Faith Cause of Action*, 31 N. Ky. L. Rev. 139, 140 (2004) ("Generally, any breach of contract action against an insurance company includes a bad faith claim, whether or not there is any evidence of bad faith."). And that is natural, since bad faith and breach of contract claims in insurance cases "derive from a common nucleus of operative fact," making them part of the same case or controversy. *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 725 (1966). For those courts accepting revival, the distinction between tort and contract claims arising out of the same factual situation is generally insufficient to restore removability. *See, e.g.*, *Adams v. W. Steel Buildings, Inc.*, 296 F. Supp. 759, 762 (D. Colo. 1969) (rejecting removal after plaintiff added negligence claims to a breach of warranty action). So, even if the revival doctrine somehow applied, Penny Gray's third amended complaint would not give Esurance a new right to remove.

B.        **The One-Year Window for Removal Has No Unwritten Estoppel Exception.**

Although the revival exception may not make removal timely in this case, Esurance alternatively argues that Penny Gray is estopped from asserting the one-year removal deadline for two reasons: she structured her lawsuit to defeat removal, and the state court erred in not dismissing her suit as settled before she added her claims for bad faith. *See* R. 8 at 7–8. Had the state court not erred, Esurance contends, Gray would have been forced to file those claims as an entirely new lawsuit, eligible for removal. *Id.* Neither argument has merit, however, because § 1446(b) contains no unwritten equitable exception to the one-year deadline. The Court must accordingly grant Gray's motion to remand.

**The Proper Construction of § 1446:** Construing the removal statute is not as easy as it might seem at first glance. On its face the statute leaves no room for any exceptions at all: "a case may not be removed on the basis of [diversity jurisdiction] more than 1 year after commencement of the action." 28 U.S.C. § 1446(b). Despite this general wording, the one-year deadline is simply a rule of procedure, and as such, it may be waived. *See Music v. Arrowood Indem. Co.*, 632 F.3d 284, 287–88 (6th Cir. 2011). But if § 1446(b) accommodates waiver, might it permit other unstated exceptions such as equitable estoppel? The Fifth Circuit stands alone as the only appeals court recognizing an estoppel exception. *See Tedford,* 327 F.3d at 426–27. District courts within the Sixth Circuit, however, have consistently rejected invitations to follow that approach. *See Riley v. Ohio Cas. Ins. Co.*, 855 F. Supp. 2d 662, 671 (W.D. Ky. 2012) (citing cases).

As it turns out, whether the removal statute's one-year deadline contains an estoppel exception is a particularly knotty question of statutory interpretation. Congress has even admitted the answer is unclear. *See* H.R. Rep. No. 112-10, at 15 (2011), *reprinted in* 2011

10

U.S.C.C.A.N. 576, 580 (explaining that the new bad faith exception is designed to settle the question "[i]n light of some ambiguity in the case law" concerning the availability of equitable tolling). Despite strong arguments on both sides, the removal statute's context suggests it contains no equitable exception.

Construing § 1446(b) is not as simple as reflexively pointing to its text. To be sure, beginning and ending with a clear text is the cardinal rule of statutory construction. *See Connecticut Conn. Nat. Bank v. Germain*, 503 U.S. 249, 253–54 (1992). But when is a text clear? Congress does not write statutes in a vacuum. *See* Frank Easterbrook, *The Case of the Speluncean Explorers: Revisited*, 112 Harv. L. Rev. 1913, 1914 (1999) ("New statutes fit into the normal operation of the legal system unless the political branches provide otherwise."). Despite their silence, generally worded statutes presumably leave room for well-established exceptions. *See* Caleb Nelson, Statutory Interpretation 180–81 (2011) (discussing such "clear-statement" or "implied limitation" rules). Thus, as with the shape-shifting robots of *Transformers*, sometimes there is more to a statute than meets the eye. The Court must accordingly examine the removal statute's full legal context to determine what it truly says about estoppel. *Cf. Merck & Co., Inc. v. Reynolds*, 559 U.S. 633, 648 (2010) ("We normally assume that, when Congress enacts statutes, it is aware of relevant judicial precedent.").

That context weighs against Esurance. On the one hand, cutting in Esurance's favor, there is a "rebuttable presumption" that nonjursdictional time limits are subject to equitable tolling. *See Holland v. Florida*, 130 S. Ct. 2549, 2560 (2010). That backdrop was the basis of the Fifth Circuit's endorsement of estoppel in *Tedford*. *See* 327 F.3d at 426. Generally speaking, the equitable tolling canon is a fair approximation of congressional intent. *See*

11

*Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 95 (1990). But another relevant and longstanding canon cuts against Esurance and the Fifth Circuit: removal statutes are "strictly construed" in favor of remand. *See Brierly*, 184 F.3d at 534. The right to remove therefore must be "clearly established" and Courts must resolve questions "regarding the scope of § 1446(b)" against removal. *Id.*; *see also Boyer v. Snap-on Tools Corp.*, 913 F.2d 108, 111 (3d Cir. 1990) (explaining that "all doubts should be resolved in favor of remand"). The anti-removal canon reflects both consistent congressional policy and the federalism costs of displacing state jurisdiction. *See Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100, 108–09 (1941). Section 1446(b) thus pits two canons directly against each other.

When canons collide, legal doctrine provides few answers. *See* Nelson, *supra* at 228. A statute's context may suggest, however, that a particular canon does not apply or gives way to another. After all, the canons are merely general rules of thumb rather than unflinching commands. As such, courts should not assume that the removal statute incorporates the typical equitable backdrop if there is "good reason to believe that Congress did *not* want the equitable tolling doctrine to apply." *United States v. Brockamp*, 519 U.S. 347, 350 (1997). Three clues suggest Congress did not adopt any unwritten equitable exception to the one-year window for removal.

First, Congress was aware when it enacted the one-year deadline that procedural gamesmanship could result in harmful forum shopping—and acted accordingly to address it. Besides adding that deadline, the Judicial Improvements and Access to Justice Act also amended §1447(c) to require plaintiffs to move for remand based on procedural defects within thirty days of removal. *See* Pub. L. No. 100-702, §1016(c)(1), 102 Stat. 4642, 4670 (1988). Congress added this provision in part to prevent parties from "hold[ing] . . . defect[s]

12

in reserve as a means of forum shopping if the litigation should take an unfavorable turn." *See* H.R. Rep. 100-889, at 72 (1988), *reprinted in* 1988 U.S.C.C.A.N. 5982, 6033. This change suggests that Congress does not understand the removal statutes to include implicit bans on opportunistic behavior. Thus, the reasonable inference from the amendment to §1447(c) is that Congress would have included an explicit exception to the one-year deadline if it thought that the opportunity for using procedural tricks to defeat removal was unacceptable.

Second, the amendment to §1447(c) also suggests Congress generally preferred predictable rules to govern removal procedure. Prior to adoption of the thirty-day limit, motions for remand only had to be filed "within a reasonable time." *See Snapper, Inc. v. Redan*, 171 F.3d 1249, 1257 n.18 (11th Cir. 1999). In an effort to avoid unnecessary litigation over removability, however, Congress opted for a clear deadline. *See* H.R. Rep. 100-889, at 72 ("[T]here is no reason why either State or Federal courts, or the parties, should be subject to the burdens of shuttling a case between two courts that each have subject matter jurisdiction."). The same considerations apply, of course, to the one-year deadline for removal. Construing that deadline to include a vague estoppel exception would encourage litigation over forum and frustrate Congress's general policy favoring clear rules. Although Congress's preference has now shifted, as indicated by the newly added bad faith exception, the context of the 1988 removal amendments suggests Congress did not intend to incorporate the normal equitable backdrop.

Finally, the strong policy of "comity and federalism" behind the strict construction of removal statutes suggests that an estoppel exception to the one-year deadline would have been express. *Brierly*, 184 F.3d at 534. While it is reasonable to presume Congress

13

incorporates unwritten equitable exceptions in other contexts, the federalism costs of removal are too serious to assume that Congress would by implication carve out such a substantial exception as estoppel. *See Palkow v. CSX Transp., Inc.*, 431 F.3d 543, 555 (6th Cir. 2005) (explaining that removal is particularly sensitive because it "directly implicates the constitutional allocation of authority between the federal and state courts"). Removal's displacement of state judicial authority is particularly disruptive in our federal system. Unlike a diversity action initially brought in federal district court, "[r]emoval plucks a case from a state court of competent jurisdiction, without the state court's consent, and deposits the case in the federal system, all at the whim of one of the parties." *See* Scott Dodson, *In Search of Removal Jurisdiction*, 102 Nw. U. L. Rev. 55, 70 (2008). Given this costly disruption, Congress likely would not expand removal by implication, even pursuant to traditional equitable exceptions. The better assumption is that Congress expressly demarcates the line between federal and state judicial power. Put simply, the presumption against removal is a stronger indicator of congressional intent than the regular equitable backdrop. For this reason, the one-year deadline for removal must be "strictly applied." *Seaton v. Jabe*, 992 F.2d 79, 81 (6th Cir. 1993) (internal quotation marks omitted). Esurance's notice of removal is therefore untimely.

**Esurance's Arguments for Estoppel:** It is accordingly unnecessary to address whether Penny Gray structured her claims to defeat removal, or whether the state court should have dismissed the suit at some earlier stage. Esurance cites no authority permitting the Court upon removal to second-guess a Kentucky court's application of Kentucky rules of procedure. But even if a state procedural error could somehow make a difference to the removal deadline, the Floyd County Circuit Court's timing of dismissal was not error here.

Assuming for sake of argument that May 7, 2013, is when the parties settled Gray's UIM contract claims, as Esurance asserts, dismissal would have been inappropriate at that time. Voluntary dismissal, as its name implies, is not done *sua sponte* by the court; it must be initiated either by the plaintiff or the parties jointly. *See* Ky. R. Civ. P. 41.01. Yet, according to Gray—and undisputed by Esurance—the parties did not seek dismissal until after finalizing the release on July 17, two weeks *after* the Floyd County judge allowed Gray to file her third amended complaint. R. 7-1 at 3. Contrary to Esurance's argument, then, at the time Gray added her bad faith claims, dismissal of the contract action would have been improper. There was thus no need for Gray to bring her bad faith claims as an entirely new suit.

## CONCLUSION

The one-year removal clock began to tick on July 1, 2010 and it has long run out. For the reasons discussed, it is **ORDERED** that Penny Gray's Motion to Remand, R. 7, is **GRANTED**. This case is **REMANDED** to the Floyd County Circuit Court. All pending motions are **DENIED AS MOOT**, and this case shall be **STRICKEN** from the Court's active docket.

This the 13th day of November, 2013.



Signed By:
*Amul R. Thapar* AT
United States District Judge